# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

KENYA SHANNON, Individually, and
on behalf of herself and others similarly situated,

    Plaintiff,

v.                                                                         Case No.: 2:22-cv-2370-MSN-atc
                                                                                                  FLSA Opt-In Collective Action
                                                                                                  JURY DEMANDED

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

## ORDER DENYING JOINT MOTION FOR SETTLEMENT APPROVAL

Before the Court is the parties' Joint Motion for Settlement Approval (ECF No. 74, "Joint Motion"). The Court commends the parties for their efforts to resolve this matter. However, for the reasons explained below, the Court **DENIES** the Motion, without prejudice to refiling.

## BACKGROUND

Plaintiff Kenya Shannon ("Named Plaintiff") initiated this matter on June 14, 2022, to recover unpaid overtime compensation and other damages that Defendant, Electrolux Home Products, Inc. ("Defendant"), allegedly owed to Plaintiff and other similarly situated individuals. Defendant is a manufacturer of home appliances. Named Plaintiff along with the Opt-In Plaintiffs (collectively, the "Plaintiffs") are former employees of Defendant and worked as non-exempt hourly paid employees in various capacities at Defendant's now-closed Memphis facility. The Complaint alleged that Plaintiffs did not receive overtime compensation due under the Fair Labor Standards Act ("FLSA") because of automatically deducted meal breaks. Defendant filed its answer on November 22, 2022. (ECF No. 22.)

A Scheduling Conference was originally set for March 3, 2023. After two motions to continue, the Scheduling Conference was reset for June 2, 2023; however, on May 18, 2023, the parties filed a joint motion to stay the matter for 200 days to allow the parties to attempt settlement through agreed-on discovery and mediation. The Court granted that motion in part and subsequently granted two extensions of the stay. During this time, two hundred fifty-nine (259) individuals filed consents to join this action. Numerous Opt-in Plaintiffs were removed from the case because Defendant employed them outside of the statutory period; two hundred eleven (211) Opt-In Plaintiffs remain as part of the proposed settlement, including the Named Plaintiff. After extensive written discovery, numerous depositions, and an all-day mediation, the parties notified the Court that they had reached an agreement in principle to settle this matter on December 20, 2023. (ECF No. 72.)

On February 16, 2024, the parties filed the Joint Motion now before the Court seeking approval of the Settlement Agreement. (ECF No. 74.) In their Joint Motion, the parties represent that they have negotiated a resolution of Plaintiffs' FLSA claims, and they move the Court to approve their Settlement Agreement and Release of Claims ("Agreement") (*see* ECF No. 74-2) and dismiss this matter with prejudice upon approval of the Agreement. (ECF No. 74.)

The Agreement provides for a "Total Settlement Amount" of $179,000. After deducting $35,000 of attorneys' fees and costs, a $5,000 service payment to Named Plaintiff, and $30,000 for a "Reserve Fund" for "Late Claimants," from that Total Settlement Amount, there is a "Net Settlement Amount" of $109,000 left to pay Plaintiffs. The amounts to be paid to Named Plaintiff and each Opt-in Plaintiff are set forth on an exhibit attached to the Agreement. The Reserve Fund is to be held in escrow by Plaintiffs' counsel and the Agreement contemplates that "Late Claimants" may make claims against the Reserve Fund "for payment pursuant to a formula based

on the total number of workweeks worked as an hourly team member during the Collective Period, provided that such workweeks are within the three-year period before the date the claim is submitted." (ECF No. 74-2 at PageID 441–42.)  A "Late Claimant" is a former employee of Defendant in its Memphis facility that worked through at least one lunch during the Collective Period, <u>who did not file a Consent to Join form before December 18, 2023.</u>" (*Id.* at PageID 439.) To date, no Consent to Join forms were filed after December 18, 2023.

## **STANDARD OF REVIEW**

The FLSA imposes a minimum wage and an overtime wage for several categories of employee.  29 U.S.C. §§ 206-07.  To ensure compliance with the overtime and minimum wage provisions, the FLSA permits an employee to sue his employer to recover unpaid wages, an additional and equal amount as liquidated damages, and reasonable attorneys' fees.  *Id.* § 216(b).

"The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement." *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  One exception applies when courts "approve settlement of suits brought in federal district courts pursuant to Section 16(b) of the FLSA." *Id.* (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[1]

---

[1] There is a circuit split as to whether the settlement of FLSA claims requires Court approval. *Compare, e.g., Martin v. Spring Break '83 Prods., LLC,* 688 F.3d 247, 256 (5th Cir. 2012) (not requiring Court approval) *with Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (requiring Court approval).  The Sixth Circuit has not spoken directly on this issue, but district courts in the Sixth Circuit have regularly required court approval of FLSA settlements.  *See, e.g., Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024 (W.D. Tenn. 2016); *Cardwell v. RPM Wholesale & Parts, Inc.*, Civil Case No. 21-10831, 2021 WL 5563979 (E.D. Mich. Nov. 29, 2021); *Love v. Gennett Co. Inc.*, No. 3:19-cv-296, 2021 WL 4352800 (W.D.

In reviewing a proposed FLSA settlement, a court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's*, 679 F.2d at 1355; *see also Green v. Hepaco, LLC*, No. 2:13-cv-02496, 2014 WL 2624900, at *3 (W.D. Tenn. June 12, 2014). First, "a bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (cleaned up); s*ee also Lynn's*, 679 F.2d at 1354 (there must be "issues, such as FLSA coverage or computation of back wages, that are actually in dispute"). Second, courts consider the following factors to determine whether a resolution is fair and reasonable:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *2 (W.D. Ky. Apr. 29, 2020) (citing *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

---

Ky. Sept. 24, 2021). However, a growing number of district courts are rejecting the Eleventh Circuit's analysis in *Lynn's Food Stores*. *See, e.g., Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635 (W.D. Ky. 2022). The parties in this case have requested approval of their settlement, so the Court has engaged in the analysis under *Lynn's*.

4

# DISCUSSION

A. **Bona Fide Dispute**

Defendant disputes Plaintiffs' allegations about the number of meal breaks they worked through and whether the Opt-In Plaintiffs are similarly situated to Named Plaintiff. (*Id.*) The parties also assert that a bona fide dispute about whether Plaintiffs worked through all or part of their automatically deducted meal breaks. (ECF No. 74-1 at PageID 429.) Thus, there are factual and legal disputes about the existence and extent of Defendant's FLSA liability. In other words, Plaintiffs face a significant risk of not prevailing on their claims. The Court thus finds there is a bona fide dispute.

B. **Fair and Reasonable Resolution**

The Agreement provides each Plaintiff with an amount that is equivalent to one (1) meal break per week worked for each Plaintiff at their particular rate of pay during the statutory period. (*Id.* at PageID 430, 433.) Ultimately, Plaintiffs will be compensated "for 1 meal break per week, that were automatically deducted, for a three-year lookback at the plaintiff's individual overtime rate of pay." (*Id.* at PageID 433.) Whether this settlement is fair and reasonable turns on consideration of the factors identified above. The Court discusses each factor in turn below.

First, the Court has no reason to believe the Agreement was reached through collusion or fraud. Courts "may presume that no fraud occurred and that there was no collusion between counsel" unless there is evidence otherwise. *See, e.g.*, *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008). The Agreement here was the result of "arms-length negotiations by experienced counsel," (ECF No. 74-1 at PageID 425), and was reached after an all-day mediation with an experienced mediator.

Second, the expense and duration of the litigation weigh in favor of the settlement being

fair and reasonable. "In evaluating settlements, courts are not required to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 895–96 (6th Cir. 2019) (cleaned up). There are over 200 Plaintiffs, and their claims would have likely required the jury to make specific findings about how many meal breaks, if any, that they worked through during their employment with Defendant. Counsel have represented that they expected to expend considerable time and resources if this matter had proceeded to trial. (*See* ECF No. 74-1 at PageID 431.) The Agreement avoids expensive and lengthy litigation and the risk associated therewith. This factor weighs in favor of the settlement.

Third, the parties have engaged in "thorough" and "complex" discovery such that the Court believes parties are able to adequately gauge the risks of continuing with litigation in this matter. (*See* ECF No. 74-1 at PageID 431.)

Fourth, the parties disagree about the merits of Plaintiffs' claims and Defendant's defenses. Plaintiffs maintain, and Defendant disputes, the number of meal breaks Plaintiffs worked through. Resolution of Plaintiffs' claims would have required the jury to resolve these factual disputes, including making credibility determinations. Plaintiffs therefore faced a significant risk that their claims would be unsuccessful. This factor thus weighs in favor of approving the Agreement.

Fifth, Counsel have expressed that they consider this settlement a fair and reasonable resolution, and as this is an opt-in case, there are no absent class members.

Finally, settlement is in the public interest. "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to promote the policy of encouraging settlement of litigation."

*Crawford*, 2008 WL 4724499, at *9 (citing *Lynn's*, 679 F.2d at 1353) (cleaned up). "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Deja Vu Servs.*, 925 F.3d at 899 (6th Cir. 2019) (cleaned up). The settlement here conserves judicial resources while also promoting compliance with the FLSA. This final factor thus weighs in favor of the settlement.

For the reasons set forth above, the Court finds that the settlement is likely fair and reasonable. The Court, however, defers making a final determination until the issue with the Reserve Fund (discussed below) is resolved.

**C.     Service Award**

The parties request that the Court approve a "Service Award" of $5,000 to Named Plaintiff "in recognition of the work and services that she contributed to the case including, but not limited to, investigative work, meetings with Plaintiffs' counsel, assumption of risks, serving as the representative plaintiff in the collective action, and participation in a deposition and mediation and related activities." (ECF No. 74-1 at PageID 432.)

The Sixth Circuit has neither approved nor disapproved the practice of service awards to class representatives. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2015); *In re Southern Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001). The Sixth Circuit has recognized that "there may be circumstances where incentive awards are appropriate," but courts may scrutinize such awards because of the "sensible fear that incentive awards may lead named plaintiffs to expect a bounty for bringing a suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). In the class action context, another district court in this circuit found that "precedent suggests service

7

awards are appropriate if, absent proof of the lead plaintiff's extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive." *Moeller v. Wk. Publications, Inc.*, 646 F. Supp. 3d 923, 926 (E.D. Mich. 2022).

Here, although the parties didn't provide "specific documentation . . . of the time actually spent on the case," *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016), they represented that Named Plaintiff spent additional time on this litigation beyond that of the Opt-In Plaintiffs by doing investigative work, attending meetings with Plaintiffs' counsel, and participating in a deposition, mediation, and other related activities. The proposed Service Award is about 9.5 times more than the average recovery for each Plaintiff, which is approximately $526.57.[2] That makes the Service Award on the high side of what courts have found appropriate but, under the circumstances, the Court isn't convinced that it's excessive enough to be a bounty or was used to "buy off" Named Plaintiff. The Court therefore would likely approve payment of the Service Award to Named Plaintiff, but because the Court must deny the Joint Motion due to issues with the Reserve Fund, the Court reserves making a final ruling about the Service Award.

**D.     Reserve Fund**

As referenced above, the Reserve Fund is problematic. As the Court understands it, the Reserve Fund attempts to allow additional individuals to opt-in to this collective action *after* the matter has been dismissed with prejudice. Put differently, the Joint Motion asks the Court to approve the settlement of claims for parties that are not before the Court, including payment of an

---

[2] To calculate this amount, the Court divided the Net Settlement Amount by the total number of Plaintiffs: $109,000 ÷ 207 ≈ $526.57 per Plaintiff.

unspecified additional amount of attorneys' fees. This presents a justiciability problem, which Judge Mays has previously explained as follows:

> A dismissal after settlement typically ends a court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Although courts can retain jurisdiction to enforce the terms of a settlement agreement, *id.*, granting an immediate dismissal here would require more than mere enforcement of a standard settlement agreement. If the Court approved the settlement and dismissed the case at the same time, it would effectively be allowing any opt-in plaintiffs to opt into a litigation that has already been dismissed. After dismissal, the Court would not simply be retaining jurisdiction over the parties to a settlement, but would effectively be asserting jurisdiction over new parties and their claims. *See O'Bryant*, 2020 WL 4493157, at *——, 2020 U.S. Dist. LEXIS 138599, at *33-34. Such post-dismissal opt-ins are not permissible. *Id.*; *Xiao Ling Chen v. Xpresspa at Terminal 4 JFK LLC*, No. 15 CV 1347 (CLP), 2018 WL 1633027 at *6, 2018 U.S. Dist. LEXIS 169758 at *17 (E.D.N.Y. Mar. 30, 2018) ("If the Court dismisses the case, then recipients of the settlement checks would have no litigation to opt in to."); *Leigh v. Bottling Grp., LLC*, No. DKC 10-0218, 2011 WL 1231161, at *2, 2011 U.S. Dist. LEXIS 33147, at *5 (D. Md. Mar. 29, 2011) ("[I]f the named plaintiffs settle their claims, the action may be rendered moot."); *Faubel v. Grogg's Heating & Air Conditioning, Inc.*, No. 2:17-cv-02410, 2018 WL 2339081 at *2, 2018 U.S. Dist. LEXIS 86766 at *4-5 (S.D. W. Va. May 22, 2018) (referring to a "general consensus that an FLSA action becomes moot once the named plaintiffs settle their claims").

*Coleman v. Amazon.com, Inc.*, No. 21-CV-2200, 2023 WL 4408713, at *3 (W.D. Tenn. July 7, 2023); *see also Lopez v. Silfex, Inc.*, No. 3:21-CV-61, 2021 WL 5795280, at *12 (S.D. Ohio Dec. 3, 2021); *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *12 (W.D. Tenn. Aug. 4, 2020).

The Reserve Fund also presents problems with attorneys' fees because there is no specific information about how those amounts will be determined for claims against the Reserve Fund. In addition, the Agreement provides that the amount remaining in the Reserve Fund as of December 22, 2025, will be returned to Defendant—sometimes referred to as a "kicker clause." *O'Bryant*, 2020 WL 4493157, at *17. Kicker clauses aren't an automatic no-go, but the parties should specify

9

why such a clause is appropriate in this matter. Because of the issues with the Reserve Fund, the Court cannot approve the settlement in its current form.

E.   **Attorneys' Costs and Fees**

"A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Pittman v. Matalco (U.S.), Inc.*, Case No. 4:18CV203, 2018 WL 6567801, at *1 (N.D. Ohio Dec. 13, 2018) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). In determining the reasonableness of attorneys' fees, "[a] district court has discretion to choose between the percentage-of-the-fund method and the lodestar method . . . ." *Baker v. ABC Phones of N.C., Inc.*, No. 19-cv-02378-SHM-tmp, 2021 U.S. Dist. LEXIS 208344, at *11 (W.D. Tenn. Oct. 28, 2021) (citing *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). *See also Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). "But even where attorney fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" *Diaz v. Rockland Gardens Assocs.*, No. 22- CV-3281 (KMK), 2023 U.S. Dist. LEXIS 19024, at *10 (S.D.N.Y. Feb. 3, 2023) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Here, Plaintiff's counsel seeks $35,000 in attorneys' fees and costs, which "represents less than 20% of the total [settlement amount], and approximately the firm's lodestar amount." (ECF No. 74-1 at PageID 433.) To corroborate these assertions, Plaintiffs' Lead Counsel submitted an affidavit to the Court detailing, among other things, the total number of hours worked and a lodestar report breaking down the hours each attorney spent on this action. (ECF No. 74-3.) The report shows a total of 155.5 hours spent on this matter and uses an hourly rate of $250; after adding $441.46 of expenses, the firm's total lodestar amount for attorneys' fees and expenses is $39,316.46. (*Id.*)

10

Given the issues identified above with the Reserve Fund, the Court has doubts about whether it can or should include that amount when considering the requested attorneys' fees and costs. Without the Reserve Fund included, the requested attorneys' fees and costs are about 23.5% of the total settlement. This is less than the 33.33% that Named Plaintiff's agreement with counsel provided for and less than the lodestar amount. The attorneys' fees and costs are therefore likely reasonable; however, because an unknown additional amount of attorneys' fees could be paid from the Reserve Fund, the Court cannot make a final finding about the reasonableness of attorneys' fees.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Joint Motion for Settlement Approval (ECF No. 74), without prejudice to refiling.

**IT IS SO ORDERED**, this 14th day of May, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE