# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

KENYA SHANNON, Individually, and
on behalf of herself and others similarly situated,

    Plaintiff,

v.

                                 Case No.: 2:22-cv-2370-MSN-atc
                                 FLSA Opt-In Collective Action
                                 JURY DEMANDED

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

## ORDER GRANTING JOINT MOTION FOR SETTLEMENT APPROVAL

Before the Court is the parties' renewed Joint Motion for Settlement Approval (ECF No. 76, "Renewed Joint Motion"). For the reasons set forth below, the Renewed Joint Motion is **GRANTED**.

## BACKGROUND

Plaintiff Kenya Shannon ("Named Plaintiff") initiated this matter on June 14, 2022, to recover unpaid overtime compensation and other damages that Defendant, Electrolux Home Products, Inc. ("Defendant"), allegedly owed to Plaintiff and other similarly situated individuals. Defendant is a manufacturer of home appliances. Named Plaintiff along with the Opt-In Plaintiffs (collectively, the "Plaintiffs") are former employees of Defendant and worked as non-exempt hourly paid employees in various capacities at Defendant's now-closed Memphis facility. The Complaint alleged that Plaintiffs did not receive overtime compensation due under the Fair Labor Standards Act ("FLSA") because of automatically deducted meal breaks. Defendant filed its answer on November 22, 2022. (ECF No. 22.)

A Scheduling Conference was originally set for March 3, 2023.  After two motions to continue, the Scheduling Conference was reset for June 2, 2023; however, on May 18, 2023, the parties filed a joint motion to stay the matter for 200 days to allow the parties to attempt settlement through agreed-on discovery and mediation.  The Court granted that motion in part and subsequently granted two extensions of the stay.  During this time, two hundred fifty-nine (259) individuals filed consents to join this action.  Numerous Opt-in Plaintiffs were removed from the case because Defendant employed them outside of the statutory period; two hundred eleven (211) Opt-In Plaintiffs remain as part of the proposed settlement, including the Named Plaintiff.  After extensive written discovery, numerous depositions, and an all-day mediation, the parties notified the Court that they had reached an agreement in principle to settle this matter on December 20, 2023.  (ECF No. 72.)

On February 16, 2024, the parties filed a Joint Motion for Settlement Approval (ECF No. 74, "First Joint Motion").  In their First Joint Motion, the parties represented that they had negotiated a resolution of Plaintiffs' FLSA claims, and they moved the Court to approve their Settlement Agreement and Release of Claims ("Original Agreement") (*see* ECF No. 74-2) and dismiss this matter with prejudice upon approval of the Original Agreement. (ECF No. 74.)  The Original Agreement provided for a "Total Settlement Amount" of $179,000.  After deducting $35,000 of attorneys' fees and costs, a $5,000 service payment to Named Plaintiff, and $30,000 for a "Reserve Fund" for "Late Claimants," from that Total Settlement Amount, a "Net Settlement Amount" of $109,000 was left to pay Plaintiffs.  The Reserve Fund was to be held in escrow by Plaintiffs' counsel and the Original Agreement contemplated that "Late Claimants" could make claims against the Reserve Fund "for payment pursuant to a formula based on the total number of workweeks worked as an hourly team member during the Collective Period, provided that such

workweeks are within the three-year period before the date the claim is submitted." (ECF No. 74-2 at PageID 441–42.) A "Late Claimant" was a former employee of Defendant in its Memphis facility that worked through at least one lunch during the Collective Period, who did not file a Consent to Join form before December 18, 2023." (*Id.* at PageID 439.) No Consent to Join forms were filed after December 18, 2023. This Court denied the parties' First Joint Motion, however, because of justiciability issues with the operation of the Reserve Fund. (*See* ECF No. 75 at PageID 476–78.)

On May 22, 2024, the parties filed the Renewed Joint Motion now before the Court. Along with their Renewed Joint Motion, the parties have submitted a copy of their revised Settlement and Release Agreement (ECF No. 76-2, "Revised Agreement"), which has removed the Reserve Fund. The Revised Agreement provides for a "Total Settlement Amount" of $149,000. After deducting $35,000 of attorneys' fees and costs and a $5,000 service payment to Named Plaintiff, from that Total Settlement Amount," a "Net Settlement Amount" of $109,000 is left to pay Plaintiffs.

## STANDARD OF REVIEW

The FLSA imposes a minimum wage and an overtime wage for several categories of employee. 29 U.S.C. §§ 206-07. To ensure compliance with the overtime and minimum wage provisions, the FLSA permits an employee to sue his employer to recover unpaid wages, an additional and equal amount as liquidated damages, and reasonable attorneys' fees. *Id.* § 216(b).

"The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement." *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). One exception

applies when courts "approve settlement of suits brought in federal district courts pursuant to Section 16(b) of the FLSA." *Id.* (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[1]

In reviewing a proposed FLSA settlement, a court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's*, 679 F.2d at 1355; *see also Green v. Hepaco, LLC*, No. 2:13-cv-02496, 2014 WL 2624900, at *3 (W.D. Tenn. June 12, 2014). First, "a bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (cleaned up); s*ee also Lynn's*, 679 F.2d at 1354 (there must be "issues, such as FLSA coverage or computation of back wages, that are actually in dispute"). Second, courts consider the following factors to determine whether a resolution is fair and reasonable:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

---

[1] There is a circuit split as to whether the settlement of FLSA claims requires Court approval. *Compare, e.g., Martin v. Spring Break '83 Prods., LLC,* 688 F.3d 247, 256 (5th Cir. 2012) (not requiring Court approval) *with Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (requiring Court approval). The Sixth Circuit has not spoken directly on this issue, but district courts in the Sixth Circuit have regularly required court approval of FLSA settlements. *See, e.g., Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024 (W.D. Tenn. 2016); *Cardwell v. RPM Wholesale & Parts, Inc.*, Civil Case No. 21-10831, 2021 WL 5563979 (E.D. Mich. Nov. 29, 2021); *Love v. Gennett Co. Inc.*, No. 3:19-cv-296, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021). However, a growing number of district courts are rejecting the Eleventh Circuit's analysis in *Lynn's Food Stores*. *See, e.g., Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635 (W.D. Ky. 2022). The parties in this case have requested approval of their settlement, so the Court has engaged in the analysis under *Lynn's*.

4

*UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *2 (W.D. Ky. Apr. 29, 2020) (citing *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

## DISCUSSION

### A.  Bona Fide Dispute

Defendant disputes Plaintiffs' allegations about the number of meal breaks they worked through and whether the Opt-In Plaintiffs are similarly situated to Named Plaintiff. (ECF No. 76-1 at PageID 487.) The parties also assert that a bona fide dispute exists about whether Plaintiffs worked through all or part of their automatically deducted meal breaks. (*Id.*) Thus, there are factual and legal disputes about the existence and extent of Defendant's FLSA liability. In other words, Plaintiffs face a significant risk of not prevailing on their claims. The Court thus finds there is a bona fide dispute.

### B.  Fair and Reasonable Resolution

The Revised Agreement provides each Plaintiff with an amount that is equivalent to one (1) meal break per week worked for each Plaintiff at their particular rate of pay during the statutory period. (ECF No. 76-1 at PageID 488, 491.) Ultimately, Plaintiffs will be compensated "for 1 meal break per week, that were automatically deducted, for a three-year lookback at the plaintiff's individual overtime rate of pay." (*Id.* at PageID 491.) Whether this settlement is fair and reasonable turns on consideration of the factors identified above. The Court discusses each factor

in turn below.

First, the Court has no reason to believe the Revised Agreement was reached through collusion or fraud. Courts "may presume that no fraud occurred and that there was no collusion between counsel" unless there is evidence otherwise. *See, e.g.*, *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008). The Revised Agreement here was the result of "arms-length negotiations and mediation." (ECF No. 76-1 at PageID 483.)

Second, the expense and duration of the litigation weigh in favor of the settlement being fair and reasonable. "In evaluating settlements, courts are not required to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 895–96 (6th Cir. 2019) (cleaned up). There are over 200 Plaintiffs, and their claims would have likely required the jury to make specific findings about how many meal breaks, if any, that they worked through during their employment with Defendant. Counsel have represented that they expected to expend considerable time and resources if this matter had proceeded to trial. (*See* ECF No. 76-1 at PageID 489.) The Revised Agreement avoids expensive and lengthy litigation and the risk associated therewith. This factor weighs in favor of the settlement.

Third, the parties have engaged in enough discovery to allow the parties and counsel "to collect, obtain, and review evidence, evaluate their claims and defenses," and "understand the scope of potential damages." (*See* ECF No. 76-1 at PageID 489.) The Court thus believes parties can adequately gauge the risks of continuing with litigation in this matter.

Fourth, the parties disagree about the merits of Plaintiffs' claims and Defendant's defenses.

6

Plaintiffs maintain, and Defendant disputes, the number of meal breaks Plaintiffs worked through. Resolution of Plaintiffs' claims would have required the jury to resolve these factual disputes, including making credibility determinations. Plaintiffs therefore faced a significant risk that their claims would be unsuccessful. This factor thus weighs in favor of approving the Revised Agreement.

Fifth, Counsel have expressed that they consider this settlement a fair and reasonable resolution, and as this is an opt-in case, there are no absent class members.

Finally, settlement is in the public interest. "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to promote the policy of encouraging settlement of litigation." *Crawford*, 2008 WL 4724499, at *9 (citing *Lynn's*, 679 F.2d at 1353) (cleaned up). "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Deja Vu Servs.*, 925 F.3d at 899 (6th Cir. 2019) (cleaned up). The settlement here conserves judicial resources while also promoting compliance with the FLSA. This final factor thus weighs in favor of the settlement.

For the reasons set forth above, the Court finds that the settlement is fair and reasonable.

**C.    Service Award**

The parties request that the Court approve a "Service Award" of $5,000 to Named Plaintiff "in recognition of the work and services that she contributed to the case including, but not limited to, investigative work, meetings with Plaintiffs' counsel, assumption of risks, serving as the representative plaintiff in the collective action, and participation in a deposition and mediation and related activities." (ECF No. 76-1 at PageID 490.)

The Sixth Circuit has neither approved nor disapproved the practice of service awards to class representatives. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2015); *In re Southern Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001). The Sixth Circuit has recognized that "there may be circumstances where incentive awards are appropriate," but courts may scrutinize such awards because of the "sensible fear that incentive awards may lead named plaintiffs to expect a bounty for bringing a suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). In the class action context, another district court in this circuit found that "precedent suggests service awards are appropriate if, absent proof of the lead plaintiff's extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive." *Moeller v. Wk. Publications, Inc.*, 646 F. Supp. 3d 923, 926 (E.D. Mich. 2022).

Here, although the parties didn't provide "specific documentation . . . of the time actually spent on the case," *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016), they represented that Named Plaintiff spent additional time on this litigation beyond that of the Opt-In Plaintiffs by doing investigative work, attending meetings with Plaintiffs' counsel, and participating in a deposition, mediation, and other related activities. The proposed Service Award is about 9.5 times more than the average recovery for each Plaintiff, which is approximately $526.57.[2] That makes the Service Award on the high side of what courts have found appropriate but, under the circumstances, the Court isn't convinced that it's excessive enough to be a bounty or was used to "buy off" Named Plaintiff. The Court therefore approves payment of the Service Award to Named Plaintiff.

---

[2] To calculate this amount, the Court divided the Net Settlement Amount by the total number of Plaintiffs: $109,000 ÷ 207 ≈ $526.57 per Plaintiff.

D.     **Attorneys' Fees and Costs**

"A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Pittman v. Matalco (U.S.), Inc.*, Case No. 4:18CV203, 2018 WL 6567801, at *1 (N.D. Ohio Dec. 13, 2018) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). In determining the reasonableness of attorneys' fees, "[a] district court has discretion to choose between the percentage-of-the-fund method and the lodestar method . . . ." *Baker v. ABC Phones of N.C., Inc.*, No. 19-cv-02378-SHM-tmp, 2021 U.S. Dist. LEXIS 208344, at *11 (W.D. Tenn. Oct. 28, 2021) (citing *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). See also *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). "But even where attorney fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" *Diaz v. Rockland Gardens Assocs.*, No. 22- CV-3281 (KMK), 2023 U.S. Dist. LEXIS 19024, at *10 (S.D.N.Y. Feb. 3, 2023) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Here, Plaintiff's counsel seeks $35,000 in attorneys' fees and costs, which "is approximately 23.5% of the Total Settlement Amount ($149,000) and is in line with the firm's lodestar amount." (ECF No. 76-1 at PageID 491.) To corroborate these assertions, Plaintiffs' Lead Counsel submitted an affidavit to the Court detailing, among other things, the total number of hours worked and a lodestar report breaking down the hours each attorney spent on this action. (ECF No. 77-1.) The report shows a total of 155.5 hours spent on this matter and uses an hourly rate of $250; after adding $441.46 of expenses, the firm's total lodestar amount for attorneys' fees and expenses is $39,316.46. (*Id.*) The requested attorneys' fees are less than the 33.33% that Named Plaintiff's agreement with counsel provided for and less than the lodestar amount. The Court therefore finds that the attorneys' fees and costs reasonable and approves the attorneys' fees

9

and costs of $35,000.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the parties' renewed Joint Motion for Settlement Approval (ECF No. 76), and **APPROVES** the parties' revised Settlement and Release Agreement (ECF No. 76-2) as a fair and reasonable resolution of the parties' *bona fide* dispute. The Court further approves payment of the Service Award to Named Plaintiff and payment of the attorneys' fees and costs for Plaintiffs' counsel. Judgment will be entered dismissing this matter with prejudice.

**IT IS SO ORDERED**, this 26th day of June, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE